## L. E. WATERMAN CO. v. MODERN PEN CO.

(Circuit Court of Appeals, Second Circuit.   November 14, 1910.)

No. 175.

TRADE-MARKS AND TRADE-NAMES (§ 95*)—SUIT FOR INFRINGEMENT—PRELIMI-
NARY INJUNCTION.

An order granting a preliminary injunction at suit of the L. E. Water-
man Company, restraining defendant from infringing complainant's trade-
mark of "Ideal" as a name for fountain pens and from unfair competition
by using the name "Waterman" without initials as a name for such pens,
affirmed; but a further provision restraining the use of the name "A. A.
Waterman & Co." by defendant in connection with its business *held* er-
roneous.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 108; Dec. Dig. § 95.*]

Appeal from the Circuit Court of the United States for the South-
ern District of New York.

Suit in equity by the L. E. Waterman Company against the Modern
Pen Company.   Defendant appeals from an order granting a prelimi-
nary injunction.   Order modified and affirmed.

The injunctive provisions of the order are printed in the foot-note.[1]

The complainant, a New York corporation, has been engaged for many years
in the manufacture and sale of fountain pens under the name of the L. E.
Waterman Company and has built up a large business therein.   It has also
registered the following trade-marks as applied to such pens: "Ideal"; "Wa-
terman's Ideal Fountain Pen, N. Y."; and "Waterman's."

The defendant, a West Virginia corporation, is selling agent of a firm called
A. A. Waterman & Co. which manufactures fountain pens and marks them
with such name.

Arthur A. Waterman had been employed by the complainant; but in 1898
he formed a partnership for the manufacture of fountain pens under the name
of the A. A. Waterman Pen Company.   The present complainant brought suit
against said firm for the infringement of trade-mark and unfair competition

[1] "1. Directly or indirectly making or causing to be made, selling or causing to be sold,
or offering for sale, or advertising any fountain pen of other manufacture than that of
the plaintiff under the name of Waterman or Waterman's or Waterman Pens, or Water-
man's Pens or Waterman Fountain Pens or Waterman's Fountain Pens or Ideal Pens, or
any mark or name in imitation thereof or near resemblance thereto as might be calculat-
ed to deceive or be likely to cause confusion or mistake in the mind of the public or de-
ceive purchasers, or which would indicate that the fountain pens sold, represented or
advertised are fountain pens of plaintiff's manufacture.

"2. Infringing the plaintiff's trade-mark 'Waterman's Ideal Fountain Pen, N. Y.,' or
infringing the plaintiff's trade-mark 'Ideal' and from manufacturing or selling fountain
pens (other than fountain pens of plaintiff's manufacture) having the said trade-marks
or either of them, or any simulation or colorable imitation thereof, on such fountain pens,
whether on the holder or on the gold pen, or on labels, boxes, signs, letter-heads, bill-
heads, circulars, or advertisements accompanying or used in connection with the making
or selling of such fountain pens, or in any manner whatsoever.

"3. Using in connection with the manufacture or sale of fountain pens (other than foun-
tain pens of plaintiff's manufacture) the name 'A. A. Waterman,' or 'A. A. Waterman &
Co.' or 'A. A. Waterman & Company' or 'Arthur A. Waterman & Company,' or any cor-
porate, firm or individual name containing the words Waterman, Waterman's or Water-
mans, or any mark or name containing the word Waterman in any form whether the
same be or be not coupled with other names or initials, or with the initials 'A. A.,' or
with the initial 'A.' or whether the same be or be not used in collocation with the word
'Pen' or Fountain Pen, or other descriptive words."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

in the Supreme Court of the state of New York, and a decree was rendered in September, 1898, enjoining the defendant from using a corporate name containing the word "Waterman," but providing as follows:

"But the defendants are not prohibited from indicating that fountain pens made by them are made or prepared or sold for or by Arthur A. Waterman & Co. or A. A. Waterman & Co."

Subsequent to this decision the name A. A. Waterman & Co. was used by successive partnerships of which said Waterman was a member. The business was not successful, and in 1905 a reorganization took place, and an agreement was entered into whereby in effect said Waterman assigned to Isaac E. and William L. Chapman, who had been previously interested with him in the business, the right to use in connection therewith the name "A. A. Waterman & Co."

The defendant was shown to have sold a limited number of fountain pens marked "Royal Ideal Pen." The evidence also tended to show some use of the word "Waterman" in connection with the sale of the goods of the firm of A. A. Waterman & Co. without the distinguishing initials.

A. S. Bacon, for appellant.
S. S. Watson (Walter B. Raymond, of counsel), for appellee.

Before NOYES, Circuit Judge, and HOLT and HAZEL, District Judges.

NOYES, Circuit Judge (after stating the facts as above). The complainant's trade-mark "Ideal" is conceded to be valid. The defendant infringed it by the sale of the pens marked "Royal Ideal Pen." Consequently the second paragraph of the injunction order was proper.

Assuming that the present copartnership of A. A. Waterman & Co. has the right under the agreement with Arthur A. Waterman to use that firm name, they have no right to use the name "Waterman" without the initials. The use of the name which they may have the right to employ concededly causes confusion, and they have no right to increase that confusion by employing any name less definite.

The defendant disclaims the use of the name "Waterman" alone. If so, an injunction against such use will do it no harm. But, as already stated, we think there was sufficient evidence of such use to warrant the first paragraph of the injunction.

The third paragraph of the injunction order is, in our opinion, erroneous. It is clear that the partnerships of which Arthur A. Waterman was a member had the right to use the name A. A. Waterman & Co. in connection with their business and to so mark their pens. The decision of the Supreme Court of the state of New York in which all parties acquiesced for many years was in accordance with principles now well established by decisions of the Supreme Court of the United States.

Similarly, said Waterman had the right to transfer to his former associates, in connection with the reorganization and sale of the business, the right to use his name. It is true that it became their duty, as it had been the duty of the previous firms, to do no act to increase the confusion necessarily arising from the use of a name similar to that of the complainant. But we find nothing in the record showing any such acts except those which we have seen to be covered by the first two paragraphs of the injunction.

There is insufficient basis presented for the contention that the agreement granting the right to use the name "A. A. Waterman & Co.". to the present firm was a mere sham and fraudulent device, not connected with the reorganization and sale of the business.

The order of the Circuit Court is modified by striking out the last paragraph thereof (paragraph 3), together with the finding that the defendant has been guilty of unfair competition by using the name "A. A. Waterman & Co.," and, as so modified, is affirmed. The costs of this court may be divided between the parties.